**Affirmed and Memorandum Opinion filed April 2, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00155-CR

**HOANG THANH DANG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 12
Harris County, Texas
Trial Court Cause No. 2099579**

## MEMORANDUM OPINION

Appellant Hoang Thanh Dang appeals his conviction for driving while intoxicated ("DWI"). Appellant challenges the trial court's denial of his motion to suppress evidence, asserting that the arresting officers lacked probable cause to support a warrantless arrest. We affirm.

## I. Factual and Procedural Background

### The Arrest

At approximately 2:45 a.m., on July 1, 2016, Christopher McCray, an emergency medical technician ("EMT") riding in an ambulance, observed appellant's vehicle with the flashers on stopped in the middle of the highway. McCray and the ambulance driver got closer to determine if appellant needed assistance. As the ambulance approached, appellant's vehicle took off and then stopped again. McCray called 911. The EMT continued to follow appellant's vehicle onto Interstate 45 until the vehicle exited the highway. McCray testified he watched the vehicle exit the highway by driving over the curb, causing sparks, and then observed the vehicle continue to move erratically on the feeder road, stopping and starting, and swerving between lanes. McCray stayed on the phone with the 911 operator until Houston Police Department ("HPD") officers arrived and pulled over the vehicle. At the scene, McCray gave his report directly to the responding law enforcement officers, and during the motion to suppress hearing, confirmed that the vehicle he observed traveling erratically was the same vehicle pulled over by the HPD officers.

Officer Thomas stopped appellant's vehicle. Officer Jafari arrived behind Officer Thomas in a separate vehicle. As he was walking toward appellant's car, Officer Jafari noticed dried up vomit on the driver's side door, and upon contact with appellant, smelled the odor of alcohol on appellant's breath and observed that appellant had slurred speech and red, glassy eyes. Appellant admitted to Officer Jafari that he had had a couple of drinks. Officer Thomas performed a field sobriety test and did not find any of the clues on the horizontal gaze nystagmus ("HGN") test. Officer Jafari, as the primary and senior officer, then performed the HGN test and found six out of six clues of intoxication. Officer Jafari

2

acknowledged that appellant had a "lazy eye," meaning that both eyes do not track together; however, he is trained and certified to perform the HGN test successfully on a person with vision in one eye.

Based on his observations of the vomit on the driver's side door of the car, the reports of appellant's erratic driving and the results of the HGN testing, Officer Jafari formed an opinion that appellant was intoxicated. Officer Jafari placed appellant under arrest and took appellant to the police station. Once at the police station, appellant consented to and underwent further sobriety tests and provided a breath sample. Appellant was charged with the misdemeanor offense of driving while intoxicated.

### Motion to Suppress

On February 7, 2018, the day of trial, a jury panel was seated. The trial court gave instructions to the panel, but prior to voir dire, appellant agreed to waive a jury trial and proceed with a hearing on a dispositive motion to suppress. No written motion to suppress was filed.

On the record, appellant agreed to plead guilty to the DWI charge without a recommendation for punishment if the court denied his motion to suppress. The State and defense agreed that the initial contact between the officers and appellant was a warrantless contact, transferring the burden to the State to justify that contact.

Appellant did not testify at the hearing. EMT McCray testified at the hearing regarding his observations of erratic driving, his contact with the 911 dispatcher and with HPD, and his identification of the vehicle as the same vehicle that was pulled over by the HPD officer.

At the hearing, Officer Jafari and Officer Thomas testified regarding their

3

training and experience, their observations of appellant, and identified appellant in the courtroom as the driver of the vehicle they came into contact with prior to making the arrest. Officer Jafari testified regarding his certification to perform field sobriety tests. Both Officers stated they did not observe appellant's driving before making the stop.

Officer Jafari found six clues out of six on the horizontal gaze nystagmus test and agreed that Officer Thomas found zero clues on the same test, which was conducted before Officer Jafari's testing of appellant. Officer Jafari stated as the primary officer he had to make sure of the test results, because he had responsibility as the primary officer.

The trial court denied appellant's motion to suppress and appellant pleaded guilty to the misdemeanor offense of driving while intoxicated.

### The Court's Findings of Fact and Conclusions of Law

On August 20, 2018, at the request of appellant, the Court made the following Findings of Fact and Conclusions of Law:

> EMT McCray, returning from an ambulance run saw Defendant's vehicle stopped on a major freeway at 2:45 AM with emergency flashers on. As the ambulance approaches, the Defendant drives off. The Defendant is seen, again, stopping on roadway, swerving between lanes and exits freeway by jumping the curb, not at an exit. EMT is the 911 caller and is relaying this information, in realtime, while following the Defendant until Officer Thomas makes a stop pursuant to information relayed to him through 911. Officer Thomas, in fact, did not observe any errant driving by Defendat but stopped him solely on 911 information.

> It must be noted that, unlike the anonymous caller situation, here EMT McCray was at the scene, identified himself and the Defendant driver and relayed his information to HPD in their investigation.

> At the scene, Officer Thomas makes first contact with Defendant and observes dried vomit on driver door, odor of alcoholic beverage,

4

slurred speech and red eyes of Defendant. Thomas acknowledges the Defendant had "lazy eye" and was unable to get any clues of intoxication on HGN test.

Officer Jafari, the senior and primary officer, does HGN and says he got 6/6 clues despite the Defendant's lazy eye situation. The Court is dubious about the results quoted by Officer Jafari. However, Jafari, with 23 years' experience chose to arrest the Defendant at the scene based on: relayed driving facts, odor or [sic] alcoholic beverage, glassy eyes, slurred speech, dried vomit, and overall appearance of the Defendant.

It is this Court's belief, as dictated in the transcript, that the arrest of this Defendant was not a mere hunch or suspicion of intoxication, and in fact was based on a good faith probable cause belief by Officer Jafari with his observations, knowledge and experience. The evidence deduced at this hearing gave this Court a clear and convincing belief that the arrest was in fact based on probable cause and that the original detention, while warrantless, was prudent to remove an unsafe driver from the roadway for further investigation.

Appellant timely filed this appeal.

## II.     Issue Presented

In his sole issue, appellant challenges his conviction, arguing that the trial court abused its discretion in denying appellant's motion to suppress because his arrest was not supported by probable cause.

## III.     Standard of Review

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard: we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). When, as here, the trial court makes findings of fact after denying a motion to suppress, we must determine whether the

evidence — viewed in the light most favorable to the trial court's decision — supports the findings. *Keehn v. State,* 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). We review the totality of the circumstances surrounding the arrest de novo to determine whether there is support for the finding that probable cause exists to justify a warrantless arrest. *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). However, this court reviews de novo the trial court's application of the law to the facts. *Ramirez-Tamayo*, 537 S.W.3d at 35.

## IV.    Analysis

### 1.    Appellant's Complaint was Preserved for Review

To preserve a complaint for appellate review, the record must show that the complaint was made by timely request, objection, or motion, stating the specific grounds therefor, and that the complaint complied with the requirements of applicable Rules. *See* Tex. R. App. P. 33.1 (a)(1). Appellant must obtain a ruling from the trial court on his motion, or, if the trial court refuses to rule, object to the court's refusal to rule on the motion. *See* Tex. R. App. P. 33.1(a)(2). To be timely, a motion to suppress must be presented before evidence is admitted. *Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. 1981); *Sims v. State,* 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). Here, appellant timely argued his motion to suppress before trial, prior to the introduction of any evidence. The trial court denied appellant's motion to suppress. Thus, appellant's complaint was preserved for our review.

## 2. The State's Burden of Proof Under the Fourth Amendment for a Warrantless Arrest

Appellant argues that the trial court erred in denying his motion to suppress because the observations made by the arresting officers did not satisfy the standard for probable cause as defined by the Fourth Amendment. The State argues that the totality of the circumstances gave rise to probable cause justifying the warrantless arrest of appellant.

It is undisputed that appellant was arrested without a warrant. The Fourth Amendment to the Constitution of the United States guarantees that "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated." U.S. CONST. amend. IV. The Due Process Clause of the Fourteenth Amendment makes this guarantee applicable to the states. *Mapp v. Ohio,* 367 U.S. 643, 650 (1961). A defendant who alleges that police violated his Fourth Amendment rights bears the burden of producing some evidence to rebut the presumption of proper police conduct. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). The defendant can satisfy this burden by establishing that the seizure occurred without a warrant. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). If the defendant does so, the burden then shifts to the State to prove the reasonableness of the seizure. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). At the motion to suppress hearing, the State stipulated that the arrest was without a warrant, shifting the burden to the State to prove that there was probable cause for the arrest.

## 3. Probable Cause Requirement For Warrantless Arrest

"Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge, and of which the officer has reasonably trustworthy information, are sufficient to justify a

prudent person in believing that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction.'" *Id.* (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer. *Id.* Other than the facts known by an arresting officer, the arresting officer's state of mind (including the officer's subjective beliefs and subjective reasons for an arrest) holds no relevance in a court's probable cause determination. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Probable cause for a warrantless arrest under article 14.01(b) of the Criminal Code of Procedure may be based on an officer's prior knowledge and personal observations[1], and an officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). "Thus, all of the information to support probable cause does not have to be within an officer's personal knowledge." *Woodward*, 341 S.W.3d at 412.

The trial court made Findings of Fact confirming that although the court was "dubious" about the results of the field sobriety test, Officer Jafari's observations, knowledge and experience, combined with the evidence presented at the hearing, constituted sufficient probable cause to support appellant's warrantless arrest.

---

[1] Article 14.01(b) of the Texas Code Criminal Procedure provides: "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

### 4. Facts Supporting Probable Cause

In determining probable cause, we review the facts and circumstances within Officer Jafari's knowledge that a prudent person could have reasonably relied upon in making appellant's arrest. In this case, an EMT observing the operation of a vehicle in a dangerous and reckless manner, while contemporaneously reporting his observations to a 911 operator, then observing Officer Thomas stop the same vehicle, immediately reporting his observations to the officers who stopped that vehicle and were at the scene, and identifying the stopped vehicle as the car that was operated recklessly, was sufficient to provide a factual basis for the stop leading to the arrest. There is no requirement that an officer must personally witness facts giving rise to criminal activity. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005) Facts supplied by citizen-eyewitnesses, which are adequately corroborated by the arresting officer, do not run afoul of the Fourth Amendment. *Adams v. Williams,* 407 U.S. 143, 147 (1972) (the factual basis for a stop need not arise from the officer's personal observation, but may be supplied by information acquired by another person); *Brother*, 166 S.W.3d at 255–60 (stop based upon facts supplied by private citizen and supplied to dispatcher and police officers did not violate Fourth Amendment); *see also Smith v. State*, 491 S.W.3d 864, 870 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Probable cause for a warrantless arrest requires the officer to have a reasonable belief that, based on the facts and circumstances within the officer's personal knowledge or of which the officer has reasonably trustworthy information, an offense has been committed.").

After Officer Thomas stopped the vehicle operated by appellant based on the information from EMT McCray, Officer Jafari observed that appellant had red, glassy eyes. Appellant's speech was slurred, and he admitted to consuming alcohol that evening. Appellant's vehicle had dried vomit on the driver's side door

and appellant's breath smelled of alcohol. These are observations made or received by Jafari indicating possible intoxication. *See Banda v. State*, 317 S.W.3d 903, 911 (Tex. App.—Houston [14th Dist.] 2010) (Officer possessed sufficient facts to form a reasonable inference that appellant drove while intoxicated based on the background facts provided by a civilian who called 911, information from appellant and appellant's performance on field sobriety tests).

After stopping appellant, Officer Jafari conducted a field sobriety test. Officer Jafari testified that he was experienced, certified, and trained in conducting field sobriety tests, and that he was trained to conduct an HGN test on a person with one eye. Jafari testified if both eyes do not track equally, the person is still a candidate for the HGN test, and despite appellant's "lazy eye," Jafari determined nystagmus was present in both of appellant's eyes. Officer Jafari testified that he found six out of six clues indicating alcohol was present in appellant's system. At the hearing on the motion to suppress, appellant did not present any evidence to contradict or impeach the expert testimony of Officer Jafari. The trial court sitting as factfinder is free to believe or disbelieve any portion of a witness's testimony and make reasonable inferences from the evidence presented. *Amador*, 275 S.W.3d at 878.

## V.     Conclusion

The trial court did not err in denying appellant's motion to suppress because appellant's warrantless arrest is supported by the evidence. We overrule appellant's sole issue and affirm the judgment of the trial court.


/s/     Margaret 'Meg' Poissant
Justice

Panel consists of Justices Christopher, Spain, and Poissant.
Do Not Publish —Tex. R. App. P. 47.2(b).