**Affirmed and Memorandum Opinion filed January 10, 2023.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-22-00161-CR
NO. 14-22-00162-CR
_____

## EX PARTE TIMOTHY DEWAYNE ISEDORE

On Appeal from the County Criminal Court at Law No. 10
Harris County, Texas
Trial Court Cause Nos. 2384032 & 2384033

## MEMORANDUM OPINION

Appellant Timothy Dewayne Isedore brings this habeas appeal from the trial court's two habeas-corpus judgments in association with a bond condition that he must not use or possess a firearm while released on bond. We affirm.

### BACKGROUND

On or about November 18, 2021, a Houston Police Department officer allegedly observed appellant driving a vehicle; the observation was contemporaneous with appellant allegedly almost sideswiping the officer's own vehicle. Shortly after that encounter, appellant allegedly drove his car through an

1

intersection despite having a red light. The officer stopped appellant's vehicle shortly afterwards and arrested appellant after detecting signs that he was intoxicated. When appellant's car was inventoried, two handguns were found in appellant's vehicle with magazines of ammunition, one of which was in the vehicle's middle console and the other of which was in the vehicle's glove compartment. Consequently, appellant was charged with two offenses: driving while intoxicated in violation of Texas Penal Code § 49.04, and unlawfully carrying a weapon in violation of Texas Penal Code § 46.02(a-1)(2).[1]

Also on November 18, 2021, the State filed a motion to enter several bond conditions regarding appellant. Most relevantly here, the State requested that appellant "not possess any firearms, ammunition, or other weapons." The trial court held a hearing on the State's motion on November 29, 2021. During the hearing, appellant's counsel raised objections to a variety of the bond conditions requested by the State, specifically including the proposed condition that appellant not possess any firearms, ammunition, or weapons. That same day, the trial court signed an "Order for Pretrial Supervision and Bond Conditions" (the "Bond Conditions Order"), which set a variety of conditions for appellant's release on bond, including that appellant "must not use or possess a firearm." Also on November 29th, appellant signed an acknowledgment at the end of the Bond Conditions Order stating that he "agree[d] to these conditions" listed in the Bond Conditions Order.

---

[1] The latter statute prohibits "intentionally, knowingly, or recklessly carr[ying] on or about his or her person a handgun in a motor vehicle or watercraft that is owned by the person or under the person's control at any time in which[] . . . the person is[] engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating; or [] prohibited by law from possessing a firearm." Texas Penal Code Ann. § 46.02(a-1)(2)(A)–(B).

On December 12, 2021, appellant filed a document titled "Application for Writ of Habeas Corpus & Motion to Strike Unreasonable Bond Conditions," in which he challenged the bond condition that he must not use or possess a firearm as unlawful, unreasonable, and unconstitutional. After holding hearings on appellant's filing on January 12 and February 3, 2022, the trial court signed an order denying appellant's request on February 3rd.[2] This appeal followed.

While the appeal was pending, the United States Supreme Court issued its opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Court's opinion substantially elaborated on the constitutional standards applying to the possession of firearms both inside and outside homes. *See id.* at 2134.

## ANALYSIS

As an initial matter, the State contends this court lacks jurisdiction over the appeal based on what appellant filed in the trial court. Essentially, the State contends that what appellant filed on December 12th and what the trial court subsequently denied on February 3rd was not a petition for a pretrial writ of habeas corpus but was instead a pretrial motion, thus making the trial court's denial of his request an unappealable interlocutory order. The State's argument focuses on the fact the document refers to itself as a "motion," and thus by the State's reckoning was not actually a petition.[3] We disagree.

---

[2] Although the State's brief contends the record lacks a written order denying appellant habeas relief, this is not correct.

[3] The State's argument also emphasizes the December 12th filing allegedly fails to comply with certain statutory requirements for habeas corpus petitions, but it advances these alleged defects as further evidence that the document is actually a motion rather than jurisdictional flaws that would otherwise bar appellant from obtaining relief. *Cf. Ex parte Golden*, 991 S.W.2d 859, 862 (Tex. Crim. App. 1999) (holding that a filing's failure to comply with procedural requirements of Texas habeas statutes did not bar the court from considering the

3

Appellant's December 12th filing requested the trial court to modify its bond condition forbidding his use and possession of firearms while released on bond, which is indisputably a matter to be contested in a pretrial habeas petition. *Cf. Ex parte Perry*, 483 S.W.3d 884, 895–96 (Tex. Crim. App. 2016) (acknowledging that "constitutional protections involving . . . bail" may properly be raised in a pretrial habeas proceeding). The fact the document does not refer to itself as a petition makes no difference here. Although titled as a motion, the document is essentially a habeas corpus petition, and the document's essence rather than its title controls for purposes of this appeal. *See Hall v. Hubco, Inc.*, 292 S.W.3d 22, 35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("In determining the nature of a filing, we look to the substance of [a] document, not merely its title.").

The State further contends appellant failed to timely preserve his objection for appeal, based primarily on appellant's signing an order agreeing to his bond conditions on November 29, 2021 and the thirteen-day gap between the bond conditions being imposed and his filing a written challenge. This court recently examined a similar situation in *Ex parte Buks*, where a party signed a written acknowledgment that he agreed to all bond conditions and waited approximately a month after having bond conditions imposed before filing a pretrial habeas challenge to those conditions. 654 S.W.3d 516, 521–22 (Tex. App.—Houston [14th Dist.] 2022, no pet.) We held this set of circumstances failed to demonstrate the party had waived challenges to those bond conditions. *Id.* at 523. As the present case involves a shorter time between when bond conditions were imposed and when they were challenged in writing, as well as an oral challenge to bond conditions on the same day they were originally imposed, the holding in *Buks* applies with even greater force here: there has been no showing that appellant

merits of a party's appeal). We conclude this aspect of the state's argument does not change the outcome.

4

waived his challenge to the bond condition restricting his possession and use of firearms.

It is therefore proper for this court to consider the merits of appellant's sole issue on appeal, that the trial court ostensibly erred by failing to strike the bond condition that appellant not use or possess a firearm. Appellant's challenge centers on the Second Amendment of the United States Constitution: "A well-regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This provision applies with equal force to the federal and state governments. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

This past summer, the Supreme Court elaborated on the protections provided by the Second Amendment in the *Bruen* decision. Therein, the Court held that when "the Second Amendment's plain text covers an individual's conduct," a regulation restricting that conduct must be "consistent with [the United States'] historical tradition of firearm regulation" to be constitutional. 142 S. Ct. at 2126. In reaching this holding, the Court rejected assertions that courts should further assess "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* at 2126–27 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). Accordingly, when the historical record presented to a court does not demonstrate a Second-Amendment-encompassed firearm regulation is consistent with American historical tradition, it is unconstitutional. *See id.* at 2138. To show consistency, however, the government does not have to provide restrictions that are identical to the one being challenged, but rather "identify a well-established and representative historical analogue." *Id.* at 2133 (emphasis omitted).

As the *Bruen* opinion was issued in the middle of this appeal, we requested supplemental briefing from the parties analyzing the bond condition in light of *Bruen*. Based on that supplemental briefing, we conclude the challenged bond condition is constitutional based on two aspects of American historical tradition in particular.

First is an American historical tradition of temporarily restricting Second Amendment and other constitutional rights generally in association with pretrial detention. Those who are subjected to pretrial detention are frequently deprived not only of the right to bear arms while in custody, but also other core constitutional rights ordinarily without constitutional defect. *United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *2 (W.D. Pa. Oct. 6, 2022); *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (rejecting the proposition that pretrial detention "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental"). Although appellant is not in pretrial detention but is instead released on conditions of bond, pretrial detention is nevertheless a useful analogue here. After all, as one court has cogently observed, "[i]t would be illogical to conclude that [courts have] the authority to set conditions temporarily depriving an accused of [myriad] constitutional protections by ordering his detention but lack[] the authority to impose far less severe restrictions, such as ordering his release on bond with a firearms restriction." *Slye*, 2022 WL 9728732, at *2.

The second aspect is one highlighted in the *Bruen* opinion itself: surety laws. *See* 142 S. Ct. at 2148–50. These laws, which began to be adopted across multiple portions of the country in the mid-19th century, generally required particular individuals to post bond before publicly carrying weapons. *See id.* at 2148. Those laws, in general, had their restrictions applied when there was a specific showing

6

of "reasonable cause to fear an injury, or breach of the peace." *Id.* (citation omitted). Although appellant's bond condition differs from surety laws highlighted in *Bruen* as it does not allow him to carry weapons even with the bond he has posted, we find it is nevertheless relevantly similar due to the scope of the restrictions they involve as well as what risks implicated them, namely fears of injury or breach of the peace. Appellant's bond condition was preceded by his indictment for unlawfully carrying a weapon, and the circumstances of the offense involved appellant allegedly possessing handguns while intoxicated, a characteristic potentially increasing the chance the weapons could be used violently, see *Roberts v. State*, 220 S.W.3d 521, 530–31 (Tex. Crim. App. 2007)). Moreover, appellant's indictment for driving while intoxicated provides a further parallel to the circumstances implicating surety laws; driving while intoxicated is itself a breach of the peace. *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.).[4]

Accordingly, analyzing appellant's challenge as the Supreme Court's *Bruen* decision requires, we hold the bond condition forbidding appellant from using or possessing a firearm while released on bond is consistent with American historical tradition and therefore passes muster under the Second Amendment. We reject appellant's sole issue on appeal.

CONCLUSION

As we have jurisdiction to resolve appellant's habeas corpus appeal on the merits, we affirm the trial court's habeas-corpus judgments.

_____

[4] Although these surety laws actually were narrower than appellant's bond condition insofar as they did not restrict private possession of firearms in the subject's own home, this distinction cannot matter here as the historical tradition of pretrial detention encompasses the bond condition in full.

PER CURIAM

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b).